IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. FOX and JODI L. FOX, his wife, | ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | Civil Action No. 06-1010<br>Judge Terrence F. McVerry/ |
| LAWRENCE COUNTY JAIL, | ) | Magistrate Judge Amy Reynolds Hay |
| Defendant | ) ) | |
| and | ) ) | |
| PRIMECARE MEDICAL, INC., | ) | |
| Additional Defendant | ) | Re: Dkt. Nos. [48] & [52] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the motions for summary judgment be granted as to the federal

claims. It is further recommended that the Court decline to exercise supplemental jurisdiction

over the state law claims, which should be remanded to the Court of Common Pleas of Lawrence

County.

REPORT

Thomas J. Fox and his wife, Jodi L. Fox, brought suit originally in state court against the

Lawrence County Jail ("Jail" or "County"). The Jail removed the action to federal court and

thereafter, the plaintiffs filed an Amended Complaint adding as a defendant PrimeCare Medical,

Inc. ("PrimeCare"), which had contracted to provide medical personnel at the jail. The Amended

Complaint asserts a claim pursuant to 42 U.S.C. § 1983 of deliberate indifference to the serious

medical needs of Thomas J. Fox ("Plaintiff") and state law claims of negligence and, as to Jodi

Fox, a state law claim of loss of consortium. Presently before the Court for disposition are the motions for summary judgment filed by the two defendants.

The factual background is as follows. Plaintiff was incarcerated in the Lawrence County Jail on an outstanding bench warrant. On April 8, 2005, at approximately 8:30 p.m., two other inmates struck Plaintiff. Approximately fifteen minutes later, a corrections officer found Plaintiff on the floor outside his cell. Thereafter, several corrections officers and the on-duty male nurse, Mark Frederick, observed Plaintiff. Plaintiff had a small amount of blood on his cheek, visible red marks on his jaw and a large bump on the back of his head. Nurse Frederick evaluated Plaintiff's condition and determined that he should be transported to the hospital for examination for a possible concussion. Nurse Frederick advised Sergeant Gargasz, the shift commander, of the need for hospital evaluation. Sergeant Gargasz arranged for transportation for Plaintiff by the Sheriff's Department deputies - - not by ambulance - - to the emergency room at Jameson Hospital. Two Sheriff's deputies left the jail with Plaintiff at approximately 9:30 p.m. and arrived at the emergency room at approximately 9:57 p.m. The emergency room staff evaluated Plaintiff and determined that he required a life flight transport to the University of Pittsburgh Medical Center. Plaintiff suffered severe and permanent brain damage an eventually died on August 25, 2007.[1]

---

[1] Although not raised by the parties, the question of whether the cause of action under Section 1983 survives the death of the plaintiff husband is a question that federal law directs to be answered by state law. See Robertson v. Wegmann, 436 U.S. 584 (1978). Pennsylvania has a survival statute, 42 Pa.C.S. § 8302, which provides that "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." Hence, it appears that the Section 1983 cause of action survives the death of Plaintiff. See, e.g., Jaco v. Bloechle, 739 F.2d 239, 241 (6th Cir. 1984)(a section 1983 action "is an action personal to the injured party" and the Court looked to the Ohio survival statute to determine if under that statute the Section 1983 cause of action survived the death of the plaintiff); Hauptmann v. Wilentz, 570 F.Supp. 351, 364 n.7 (D.N.J. 1983)("A cause of action under the Civil Rights Act survives the complainant's death,

*Standard of Review*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Where the record taken as a whole could not lead to a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587. The inquiry involves determining whether the evidence presents a

_____

however, if the cause of action would survive under the appropriate state law."), aff'd, 770 F.2d 1070 (3d Cir. 1985) (Table).

It is also clear under Pennsylvania law that "all actions that survive a decedent must be brought by a personal representative, duly appointed by the Register of Wills." Finn v. Dugan, 394 A.2d 595, 596 (Pa. Super. 1978) (citing Lovejoy v. Georgeff, 303 A.2d 501 (Pa. Super. 1973)). Accord Nelson v. Estate of Massey, 686 A.2d 1350, 1351 (Pa.Super. 1996). See also Beascoechea v. Sverdrup & Parcel and Associates, Inc., 486 F.Supp. 169, 173 (E.D.Pa. 1980)("A survival action, on the other hand, is not a new cause of action at all, but 'merely continues in (the decedent's) personal representatives the right of action which accrued to the deceased at common law because of the tort'."). We note that, to date, there has been no formal suggestion of death filed in this case nor any effort to substitute as a party for Plaintiff husband, Plaintiff's personal representative, who has been duly appointed by the Register of Wills. See Fed.R.Civ.P. 25.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990)

(quoting Anderson, 477 U.S. at 251-52).

If a court, having reviewed the evidence with this standard in mind, concludes that "the

evidence is merely colorable . . . or is not significantly probative," then summary judgment may

be granted.  Anderson, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to

show that there is some dispute as to facts, rather, "only disputes over facts that might affect the

outcome of the suit will prevent summary judgment."  Anderson, 477 U.S. at 248.  Accord

Rexnord Holdings v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) ("[T]he mere existence of

*some* factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment[.]"); Dykes v. DePuy, Inc., 140 F.3d 31, 36 (1st Cir. 1998) ("summary

judgment is not precluded by just any factual quibble").

In short, the summary judgment motion is an evidence testing device to see if there is

sufficient evidence to support a party's position with respect to an issue for which that party bears

the burden of proof at trial so as to justify holding a trial.  See, e.g., Anderson, 477 U.S. at 249

("there is no issue for trial unless there is sufficient evidence favoring the non moving party for a

jury to return a verdict for the party.").

*Discussion*

In order to prove a Section 1983 cause of action, a plaintiff must produce evidence of (1)

misconduct that was committed by a person acting under color of state law; and (2) that as a

result of such misconduct, he was deprived of rights, privileges, or immunities secured by the

Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988).  The Supreme

4

Court has explained that analysis of a violation of the Eighth Amendment standards involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment, and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). In cases such as this one - - which involves a purported denial of medical care - - to prove the subjective component of an Eighth Amendment claim, a plaintiff has the burden of proving that the defendant acted with deliberate indifference. Estelle v Gamble, 429 U.S. 97 (1976); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). "Deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.

Husband Plaintiff brought suit under Section 1983 to hold Lawrence County Jail liable for allegedly violating his constitutional rights. However, as noted by Defendant Jail, it does not possess the capacity to be sued. Dkt. [49] at 16 to 17. To the extent that Plaintiff is, in fact, seeking to sue Lawrence County, we note that in order to hold a municipal entity liable under Section 1983, the municipal entity itself must have committed a constitutional tort; it cannot be held liable solely on the basis of respondeat superior. See, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1981) (noting there is no respondeat superior liability under Section 1983). "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion

that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979).

The Supreme Court explained how a Section 1983 plaintiff can establish a municipal entity's liability in the following way:

> We held in Monell v. New York City Dept. of Social Servs., 436 U.S. [658], 689 [1978], that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. We also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. Our conclusion rested partly on the language of § 1983 itself. In light of the statute's imposition of liability on one who "subjects [a person], or causes [that person] to be subjected," to a deprivation of federal rights, we concluded that it "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Id., at 692. Our conclusion also rested upon the statute's legislative history. As stated in Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986), "while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others " (citing Monell, supra, at 665-683). We have consistently refused to hold municipalities liable under a theory of respondeat superior. [citations omitted]
>
> Instead, in Monell and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. [citations omitted] Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-404 (1997).

"Liability will be imposed when the policy or custom itself violates the Constitution or when the

policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one its employees." Colburn v. Upper Darby Tp., 946 F.2d 1017, 1027 (3d Cir. 1991).

This same analysis holds for PrimeCare. Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 - 84 (3d Cir. 2003)("PHS [i.e., a private health care subcontractor for a jail] cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. In order for PHS to be liable, the Natales must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege.")(footnote and citations omitted).

It is the Plaintiff's burden to prove the existence of the policy or custom (hereinafter simply "policy") and that the policy proximately caused the constitutional tort. See, e.g., Watson v. Abington Tp., 478 F.3d 144, 156 (3d Cir. 2007)("In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered.").

The Defendants have pointed out that there is a lack of evidence as to the existence of a policy which proximately caused the tort here. Dkt. [49] at 12 to 13 (County); Dkt. [54] at 2 to 7 (PrimeCare). This was sufficient to meet their initial summary judgment burden so as to shift the burden to Plaintiff to come forward with such evidence of a policy that proximately caused a constitutional tort. Plaintiff has failed to do so.

Initially, we note that Plaintiff's filed a "statement of material facts." Dkt. [58]. Defendant Jail filed objections to Plaintiff's statement of material facts because it failed to

comply with Local Rule 56.1.C.1.[2]  Plaintiff failed to comply with the Local Rules by failing to

cite to specific portions of the record in support of his statement of facts.  Dkt. [58].  Despite the

Defendant's objection, Dkt. [65], Plaintiff failed to cure this omission.  Such justifies the Court

in ignoring Plaintiff's statement of material facts.  See, e.g., Bronson v. White, 2007 WL

3033865, at *1 n.1 (M.D.Pa. Oct. 15, 2007)("Although Plaintiff has denied certain paragraphs of

the Defendants' Statement of Material Undisputed Facts, he has not pointed to record evidence to

support such denials.  Therefore, pursuant to Local Rule 56.1, those material facts are deemed to

be admitted."); Ferace v. Hawley, 2007 WL 2823477, *1 (W.D.Pa. Sept. 26, 2007)("Defendants

set forth a concise statement of material facts.  [DE 60].  Plaintiff, however, failed to respond to

these statements in accordance with LR 56.1(C) (1), and consequently, the facts set forth in the

concise statement of material facts submitted by Defendants are deemed to be admitted by

---

[2]  That local rule provides as follows:

**A Responsive Concise Statement:** A separately filed concise statement, which responds
to each numbered paragraph in the moving party's Concise Statement of Material Facts
by:
>  (a) admitting or denying whether each fact contained in the moving
>  party's Concise Statement of Material Facts is undisputed and/or
>  material;
>  (b) setting forth the basis for the denial if any fact contained in the
>  moving party's  Concise Statement of Material Facts is not admitted in
>  its entirety (as to whether it is undisputed or material), with appropriate
>  reference to the record (See LR 56.1B(1) for instructions regarding
>  format and annotation);

Local Rule 56.1B(1) provides in relevant part that

>  The facts set forth in any party's Concise Statement shall be stated in separately
>  numbered paragraphs. **A party must cite to a particular pleading, deposition, answer
>  to interrogatory, admission on file or other part of the record supporting the
>  party's statement, acceptance, or denial of the material fact**;

(emphasis added).

Plaintiff for the purpose of the instant motion, in accordance with LR 56.1(E).").  On this basis

alone, given that we can deem the Defendants' statements of material facts undisputed, the Court

could grant the summary judgment motion since they have met their initial summary judgment

burden to show no genuine issue of material fact.

Nevertheless, even if the Court were to accept Plaintiff's statement of material facts as

true, still, the Defendants would be entitled to summary judgment because Plaintiff fails to

establish a policy that caused him an injury.

Plaintiff seeks to hold defendants liable for their alleged deliberate indifference to his

serious medical needs.  In order to do so, he must adduce evidence of a policy that is itself

unconstitutional or evidence that a policy was the moving force behind the constitutional tort.

The only policy mentioned by Plaintiff in his statement of facts in connection with the deliberate

indifference to medical need claim is as follows:

> The County and PrimeCare jointly defined the protocols of emergency
> care within the <u>Comprehensive Health Services Agreement</u>, which was signed by
> the Lawrence County Commissioners and PrimeCare's President, Executive Vice
> President, Vice President of Operations, and Vice President of Finances and
> Marketing. The agreement calls for the following on emergency care: "The
> PrimeCare medical director and/or Medical Contractor Administrator <u>in
> conjunction with</u> Lawrence County Correctional Facility Authorities and the
> Corporate Director will determine in the first instance whether emergency
> transportation is warranted" (Emphases added [by Plaintiff's counsel])[.]

Dkt. 58 at 4, ¶ 10.  Even accepting the fact that the two Defendants were jointly able to determine

the mode of transport Plaintiff would take to the hospital, such a policy does not establish a

constitutional tort.  Plaintiff does not appear to argue, and indeed could not argue, that this policy

itself is unconstitutional.[3]  Hence, it remains open to him to show that this policy was the

"moving force" behind, or, in other words, the proximate cause of the constitutional tort of one

of the Defendants' employees.  There is simply no way that such a policy can be said to have

caused any constitutional tort and indeed, Plaintiff has not offered any evidence otherwise,

notwithstanding that the Defendants argue this very point.  See, e.g., Dkt. [54] at 2

("PRIMECARE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE . . . THE FACTS OF

RECORD CANNOT SUPPORT A CLAIM THAT A POLICY OR CUSTOM DEPRIVED

PLAINTIFF OF A CONSTITUTIONAL RIGHT" ); id., at 6 to 7 ("Plaintiff has failed to

establish liability under § 1983.  Indeed, the injuries suffered by the Plaintiff were the result of an

assault committed by fellow inmates and were not the result of deliberate indifference."); Dkt.

[49] at 12 ("THERE IS NO EVIDENCE THAT PLAINTIFF'S INJURY WAS CAUSED BY

ANY POLICY, PRACTICE OR CUSTOM OF LAWRENCE COUNTY JAIL.").

     As noted above, the same principles that apply to render the County liable, i.e., the

demonstration of a County policy that caused the constitutional tort, apply to PrimeCare.  The

above analysis with respect to the County is equally applicable to PrimeCare, perhaps, even more

so.  The only policies that Plaintiff appears to point to with respect to PrimeCare and the County

on his deliberate indifference to his medical needs claim are the contract between PrimeCare and

---

[3]  It is possible that this policy could be unconstitutionally applied, as when, for example a medical provider determines that a person is medically required to be transported by ambulance and the corrections staff overrule this determination and harm to the person results therefrom.  But that is not what occurred here.  Plaintiff does not argue, and indeed on this record could not argue, that Nurse Frederick determined that an ambulance was medically necessary but that Sergeant Gargasz overruled this decision.  Rather, Plaintiff argues that Nurse Frederick said Plaintiff needed immediate medical attention and Sergeant Gargasz should have called an ambulance rather than the sheriff but that Gargasz did not call an ambulance because he asked Nurse Frederick if transport by the sheriff was acceptable and the Nurse said yes.  However, because this policy itself is not unconstitutional it remains open to Plaintiff to show that the policy was the driving force behind a constitutional tort.

the County, Dkt. [56] at 20, and PrimeCare's policies for handling medical situations. Dkt. [56] at 20. There is nothing in that contract that would permit a rational juror to find for Plaintiff in terms of an unconstitutional policy that caused him any federal tort. This is true notwithstanding Plaintiff's argument that the contract is ambiguous as to who may make the decision as to how an inmate is to be transported in a medical situation, i.e., whether it is the medical personnel's decision or the correctional staff's decision. See, e.g., Dkt. [56] at 20 to 21. Such an ambiguity simply is not sufficient to establish that the policy itself is unconstitutional. Hence it remains open to Plaintiff to show that this ambiguity was the moving force or proximate cause of a constitutional tort of one of the Defendants' employees. Plaintiff fails to do so.

Plaintiff appears to contend that the ambiguity establishes that **either** corrections staff, i.e., the shift commander (Sergeant Gargasz)  or the nurse (i.e., Frederick) or the nurse's supervisor (who was not at the Jail) could decide the mode of transport for an inmate in need of going to the hospital. The evidence of record, as presented by Plaintiff, is that Sergeant Gargasz, the shift commander, could have decided to call an ambulance and would have called an ambulance if Nurse Frederick had said Plaintiff needed "immediate medical attention." Plaintiff further contends that the record establishes a material factual dispute over whether Nurse Frederick did use such language. Plaintiff argues that even though Nurse Frederick used this language, i.e., Frederick stated to Gargasz "Plaintiff needed 'immediate medical attention,'" Sergeant Gargasz failed to call the ambulance, as he said in his deposition he would have, if Nurse Frederick had used this language. Rather, Sergeant Gargasz asked Nurse Frederick how Plaintiff should be transported and Nurse Frederick indicated via sheriff transport.

Viewing this evidence in a light most favorable to Plaintiff, it establishes, at most, that Sergeant Gargasz either did not hear, or did not remember hearing, or at worst, ignored Nurse Frederick's statement of the need for immediate medical attention, and decided to ask Nurse Frederick anyway as to which mode of transport was needed, and ultimately deferred to Nurse Frederick's decision to go with a Sheriff's transport instead of an ambulance. However, Plaintiff utterly fails to relate this factual scenario to a policy chargeable to the County and/or PrimeCare. The sole argument raised is that the contract language as to who should make the ultimate decision on how to transport was ambiguous. But again, Plaintiff fails to explain how this ambiguous contract is responsible for Sergeant Gargasz's actions, who, according to Plaintiff's interpretation of the record, which we accept for present purposes, could have called an ambulance and would have, had Nurse Frederick used the words "immediate medical attention" but he still asked Nurse Frederick how Plaintiff should be transported. Even if the policy were not ambiguous and it provided, as the Defendants contend, that Primecare staff had the ultimate authority, then the sheriff's transport would have been called per Nurse Frederick's instructions. Even if the policy were not ambiguous and it provided that Jail staff had the ultimate authority, then it was Sergeant Gargasz's decision and there is no evidence that had it been his ultimate decision, he would not have chosen to act the same way he did, i.e., ask the nurse what he thought and then defer to him. If the ambiguous contract language would not have impacted the decision and there is no evidence that it would have, then it cannot be said to have caused any constitutional tort. Hence, there is no evidence of causation. The presumed existence of the ambiguity in the contract (accepting Plaintiff's view of the facts) simply does not evince the kind

of deliberate indifference required of a policy so as to impose liability nor has Plaintiff demonstrated any causation with respect to this ambiguity.

The only other policy Plaintiff complains of is the "lack of policy for specific injuries (for example head injuries) which would require immediate transport." Dkt. [56] at 20. To the extent that Plaintiff attempts by this argument to establish that the policy itself is unconstitutional, he fails. The policy Plaintiff challenges may be found at Dkt. [55] at 36 to 37. This policy sets up guidelines as to how a decision is to be made to transport an inmate, creating three classes of situations: nonurgent, urgent and emergent. Unless, Plaintiff expects the policy to reference each specific kind of medical emergency, and such an expectation is not reasonable as a matter of law, no reasonable juror could find that the policy in place for deciding the mode of transport was itself unconstitutional. Nor has Plaintiff adduced evidence that this policy was the moving force or proximate cause of the constitutional tort.

Plaintiff also appears to be making a claim that the County failed to protect him. In light of his attempt to render the County liable, he must adduce evidence of a policy that caused the constitutional tort. The only policy which Plaintiff mentions in connection with the failure to protect claim, is as follows:

> There is a policy within the Lawrence County Jail, which Officer Renee Baldwin testified to that the bubble is used to house inmates who have potential problems with fighting with inmates outside the bubble. Further inmates that are housed outside the bubble in cell block D are not to get in inside the bubble to mingle with inmates inside the bubble in housing cell block D. This is a known policy within the Lawrence County Jail.

Dkt. [58] at 5, ¶ 17.[4]  To the extent that Plaintiff seeks to make out a failure to protect claim, see,

e.g., Dkt. [15] at 7, ¶ 44.a, the conceded existence of this policy supports summary judgment in

favor of the Defendant Jail.  Absent any other policy, and Plaintiff points to none, there is no

material factual dispute as to the failure to protect claim with regards to Defendant County which

would preclude the grant of summary judgment in favor of the County.  While Plaintiff does

indicate that there is evidence that individual employees of the Jail knew of the potential danger

between Plaintiff and other inmates and some knew even before the attack, Dkt. [58] at 5, ¶¶14

to 16, such is not sufficient to hold the County liable because Plaintiff adduces no evidence of a

policy on the part of the County let alone evidence of any causal connection between some

County policy and the alleged constitutional tort.

To the extent that Plaintiff seeks to hold the County liable upon a failure to train theory,

see Dkt. [56] at 19,[5] Plaintiff does not elaborate upon this other than in the one single sentence

quoted by the Court in the footnote, and he does not adduce any legal argument with respect to

---

[4]  See also Dkt. [56] at 4 to 5:

> It was the testimony of Guard Renee Baldwin that the inmates that were
> housed in different areas of cell block D were not allowed to mingle
> with one another because there was a risk of fights between those
> inmates (Exhibit C pg. 11 ll. 18 – 25 & pg 12 ll. 7-20). Those housed
> outside the "bubble" were to be kept out of the "bubble". (Id.) This was
> a known policy to the correction officers, which was not enforced by
> Officer Struthers or Officer Martino on the day in question, as Miller
> was able to get to Mr. Fox in the area of cell block D, known as the
> "bubble". (Id).

See also Dkt. [56] at 17 to 20.

[5]  Plaintiff contends that "the Defendant County failed to effectuate training of its staff sufficient
to teach them how to prevent such occurrences" i.e., inmate upon inmate assaults.  Dkt. 56 at 19.

this theory and, indeed, fails to show a genuine issue of material fact with respect to a failure to train claim.

The Supreme Court explained what must be shown to establish a failure to train theory of municipal liability. The Supreme Court noted that

> We hold today that the inadequacy of police training may serve as the basis for §
> 1983 liability only where the failure to train amounts to deliberate indifference to
> the rights of persons with whom the police come into contact. This rule is most
> consistent with our admonition in *Monell*, 436 U.S., at 694, and *Polk County v.
> Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983
> only where its policies are the "moving force [behind] the constitutional
> violation." Only where a municipality's failure to train its employees **in a relevant
> respect** evidences a "deliberate indifference" to the rights of its inhabitants can
> such a shortcoming be properly thought of as a city "policy or custom" that is
> actionable under § 1983.

City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989)(emphasis added)(footnote omitted).

To establish liability on a failure to train theory, the Court of Appeals has explained that

> *City of Canton* teaches that ... [i]n a prison suicide case, [under § 1983] ... the
> plaintiff must (1) identify specific training not provided that could reasonably be
> expected to prevent the suicide that occurred, and (2) must demonstrate that the
> risk reduction associated with the proposed training is so great and so obvious that
> the failure of those responsible for the content of the training program to provide
> it can reasonably be attributed to a deliberate indifference to whether the detainees
> succeed in taking their lives.

Colburn v. Upper Darby Township, 946 F.2d 1017, 1029-30 (3d Cir. 1991). There is no reason

why the required proof here, in the alleged failure to train for prevention of inmate upon inmate

attacks, should be any different than that required for failure to train for assessing potential

suicides. Here, Plaintiff absolutely fails to adduce evidence of either prong under Colburn. The

only evidence that Plaintiff points to is the Department of Corrections evaluation. Dkt. [60] at

43. This generally shows that 17 full time Jail staff who had been employed for more than 12

months had not yet completed an approved basic training program.  While such may establish

inadequate training as a general proposition, the evidence utterly fails to "identify **specific**

training not provided that could reasonably be expected to prevent the [inmate upon inmate

attack]  that occurred, and (2) [fails to] demonstrate that the risk reduction associated with the

proposed training is so great and so obvious that the failure of those responsible for the content

of the training program to provide it can reasonably be attributed to a deliberate indifference to

whether the detainees succeed in" attacking other detainees within the contemplation of <u>Colburn</u>.

(emphasis added).   Indeed, in <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314 (3d Cir. 2005),

even more evidence was presented on the plaintiffs' failure to train claim than that which

Plaintiff presents herein and the Court still held such to be insufficient to survive summary

judgment.  Specifically, plaintiff-Wolszyn's

> wife points to the affidavit and report of R. Paul McCauley, Ph.D., a professor of
> criminology and former chairperson of the Department of Criminology at Indiana
> University of Pennsylvania. He identified the following as deficiencies in
> Lawrence County's training:
>
>> The facility failed to have in place appropriate intake documents
>> necessary to the evaluation and prevention of suicide;
>> The facility failed to have in place a policy which would have
>> resulted in Woloszyn either being placed in a cell for prisoners at
>> risk for suicide or with another person. Instead, Mr. Woloszyn was
>> assigned to a cell with vented bunk (i.e. with an open hole through
>> which a blanket could be tied) and a blanket. Mr. Woloszyn's
>> suicide occurred by use of the vent and blanket;
>> The staff was not qualified to assess and prevent suicide;
>> Emergency medical equipment was not located and personnel were
>> not properly trained in its use.
>
> The training deficiencies McCauley identified are as broad and general as
> they are conclusory. Prof. McCauley does not identify specific training that would
> have alerted LCCF personnel to the fact that Woloszyn was suicidal as Colburn I
> and II require. He also concludes that Hartman-Swanson "was not trained in

suicide prevention and did not have a way to formally prepare a meaningful suicide risk assessment for Mr. Woloszyn." However, he never identified specific training that could reasonably have caused Hartman-Swanson to assess whether Woloszyn's behavior and demeanor indicated that Woloszyn posed a risk of suicide.

Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005). If the great amount of evidence in Woloszyn was insufficient to survive summary judgment, then the comparatively lesser evidence Plaintiff points to herein cannot create a genuine issue of material fact with respect to his failure to train claim. Accordingly, the County is entitled to summary judgment on this failure to train claim. The same holds true to the extent that Plaintiff seeks to hold PrimeCare liable on a failure to train theory. Dkt. [56] at 21.

In the alternative, even if we assume for the sake of argument that Plaintiff had produced sufficient evidence of a policy on the part of the Defendants, Plaintiff has failed to adduce sufficient evidence of an objective deprivation. Plaintiff claims that the evidence of record establishes a material issue of fact as to whether his Eighth Amendment rights were violated.

It is not entirely clear what Plaintiff is claiming to be the objective deprivation here. There are two possibilities. Plaintiff may be alleging that the delay in treatment caused by the Defendants' agents choosing to call the Sheriff's department to transport Plaintiff to the hospital rather than the ambulance constituted the objective deprivation. See Dkt. [56] at 8 (arguing delay and failure to get Plaintiff "timely medical care"). Plaintiff's second possible theory is that the Defendants denied Plaintiff medical treatment altogether by calling the Sheriff's office to transport him instead of calling the ambulance to transport him because had he been transported by ambulance, Plaintiff would have received medical treatment en route whereas with the Sheriff's transport, he did not receive any such medical treatment. See Dkt. [66] at 3.

We will take up the delay theory first. The general rule is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000)("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in . . . harm."). This is the rule in this Circuit. See, e.g., Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (the prisoner-plaintiff " presented no evidence of any harm resulting from a delay in medical treatment."). Instantly, Plaintiff has failed to adduce any evidence of additional harm[6] caused by the delay. Indeed, he has not even adduced evidence of a delay. As part of his burden under the Eighth Amendment to show an objectively serious deprivation, he had the burden of showing that transport by the ambulance would have been quicker than transport by the Sheriff's department. See, e.g. Dabbs v. Bolin, 21 F.3d 427 (Table), 1994 WL 95928, at *3 (6th Cir. March 23, 1994)("Dabbs did not show how an ambulance could have transported him to the hospital for treatment any more quickly than the waiting patrol car."). The record is silent as to this and a silent record redounds to the detriment of the party with the burden.

Morever, Plaintiff has failed to adduce any expert evidence that the delay caused any additional harm as is his burden, i.e., that any delay in transporting Plaintiff via the Sheriff's

---

[6] Obviously Plaintiff suffered harm from the attack, however, there is no evidence of record that he suffered any additional harm from the delay of, at most, one hour and twelve minutes. Dkt. [56] at 8 (noting personnel became aware of the incident at approximately 8:45 p.m. and Plaintiff arrived at Jameson hospital at 9:57 p.m.). While Plaintiff baldly alleges that as a result of the beating "**as well as** the failure of the [Defendants] to get him timely medical care, Mr. Fox suffered pressure on his brain from a subdural hematoma," Dkt. [56] at 8 (emphasis added), there is not one scintilla of medical evidence of what role the delay, caused by calling the Sheriff for transport as opposed to calling an ambulance, played in causing harm, if any, to Plaintiff.

department rather than by an ambulance caused any harm to Plaintiff. See, e.g., Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001)("[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.") (quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir. 1994), abrogation on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002), as recognized in, Atkins v. County of Orange, 372 F.Supp.2d 377, 415 (S.D.N.Y. 2005)); Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)(same); Daniel v. Levin, 172 Fed.Appx. 147, 149 (9th Cir. 2006)("Daniel failed to provide objective evidence of any additional serious injury caused by the alleged delays."); Westerfield v. Penner, 2006 WL 2226102, at *11 (E.D.Cal. Aug. 3, 2006)("The court is reduced, as courts often are, in granting summary judgment because no jury could find that plaintiff was actually harmed by any delay in treatment."). Accordingly, because Plaintiff failed to adduce any evidence of harm caused by the alleged delay in getting Plaintiff to the hospital from the jail due to the decision to transport him via the Sheriff rather than via the ambulance, the Defendants are entitled to summary judgment because no reasonable juror could find for Plaintiff on his Eighth Amendment claim.

We next consider Plaintiff's possible alternative theory that Plaintiff was completely denied medical treatment for the duration of the trip to the hospital because, had the ambulance transported Plaintiff, he would have received treatment en route rather than no medical treatment as was the case with the Sheriff Department's transport. The court is not persuaded. Absent evidence that the failure to treat Plaintiff during the trip between the hospital and the jail, (which was less than a half hour according to Plaintiff, i.e., the sheriff's transport left the jail at 9:30p.m.

and arrived at the hospital at 9:57p.m., Dkt. [56] at 26), caused Plaintiff any harm and Plaintiff has adduced no such evidence, Plaintiff's claim must fail for the same reasons that the delay theory failed, i.e., the lack of evidence as to a sufficiently serious objective deprivation.   To the extent that Plaintiff would argue that Plaintiff was denied treatment at the jail during the time it took for the Sheriff's transport to arrive in comparison with the time it might have taken for an ambulance to arrive, i.e., Plaintiff would have received medical treatment sooner had the ambulance been called, there are several problems with this argument.   First, during this time while awaiting the Sheriff's transport, Plaintiff was not denied treatment; he was evaluated by a nurse, and, per the nurse's instructions, he was attended to by a corrections officer to assure that Plaintiff not fall asleep, while the nurse was not very far away, doing the required paperwork and/or making the required phone calls.   Second, this argument really is not about the complete denial of treatment but a delay of treatment and that argument was dealt with above.   See Joseph ex. rel. Estate of Harbin v. City of Detroit, 289 F.Supp.2d 863, 869 (E.D. Mich. 2003)(in a case where defendants ignored complaints of chest pain for several hours but subsequently transported prisoner to the hospital where he died 12 hours later, the court held that "the Defendant City and its officers did not altogether deny medical treatment to Mr. Harbin, but instead delayed it for several hours.   In order to show that this delay rose to the level of a constitutional violation, Plaintiff must 'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.' Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001)").   To the extent that Plaintiff would argue that the time for transporting him to the hospital would have even been shorter had the ambulance taken him rather than the Sheriff, again, there is no evidence of record to indicate this is factually accurate nor is there any evidence

that even if it were the case, that the ambulance could have gotten Plaintiff to the hospital more quickly than the roughly half an hour it took the Sheriff's transport to get him there, any harm resulted to Plaintiff from the difference in time.

Accordingly, summary judgment should be entered in favor of the Defendants because no rational juror could find that Plaintiff suffered a sufficiently objective deprivation by the mere fact that he was transported via Sheriff rather than ambulance in the absence of any evidence that such mode of transport caused Plaintiff any harm. There is not one scintilla of evidence on this record that Plaintiff's tragic injuries and ultimate death were caused by anything other than the attack by fellow inmates.

In light of the recommended grant of summary judgment on the federal claims, upon which the federal Court's jurisdiction was predicated, there does not affirmatively appear on the record any reason for the court to exercise supplemental jurisdiction over the state law tort claims. See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995));  28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction . . . .").   The grant of summary judgment by a court on the federal claims is included within the meaning of the phrase contained in Section 1367(c)(3), i.e., "dismissed all claims." Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) ("If it appears that the federal claim is subject to dismissal under

F.R.Civ.P. 12(b) (6) or could be disposed of on a motion for summary judgment under

F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence

of extraordinary circumstances."); O'Brien v. Maui County, 37 Fed.Appx. 269, 273 (9th Cir.

2002) ("Having disposed of all of O'Brien's federal claims on summary judgment, the district

court declined to assert supplemental jurisdiction over O'Brien's state law negligence claims.

O'Brien contends that this constituted reversible error. There is no basis for her contention.

Under 28 U.S.C. § 1367(c)(3), a district court may, in its discretion, decline to exercise

supplemental jurisdiction over related state law claims once it has 'dismissed all claims over

which it has original jurisdiction....' As the district court properly dismissed the federal claims, it

did not abuse its discretion in dismissing the state law negligence claims as well.")(footnote

omitted). Accordingly, the state law claims should be remanded to the Court of Common Pleas

of Lawrence County.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local

Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in

accordance with the schedule established in the docket entry reflecting the filing of this Report

and Recommendation. Failure to timely file objections may constitute waiver of any appellate

rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated:  2 June, 2008

cc:     Hon. Terrence F. McVerry
        United States District Judge

        All counsel of record by Notice of Electronic Filing